**B**

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT

In the Matter of ███████████████ nd
███████████████ , on behalf of ████
and ██████████████ , from
action of the SHULAMITH SCHOOL FOR GIRLS
regarding denial of application for religious
exemption from immunizations

Appeal No. 21062

# MEMORANDUM OF SHULAMITH SCHOOL FOR GIRLS
# IN OPPOSITION TO RELIEF REQUESTED BY PETITIONERS
# AND IN SUPPORT OF MOTION TO DISMISS PETITION

Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
10th Floor
New York, New York 10175
(212) 682-0020

# TABLE OF CONTENTS

FACTS ................................................................................................................. 1

ARGUMENT ...................................................................................................... 5

I.  THE COMMISSIONER MUST DECLINE TO
ENTERTAIN THIS APPEAL UNDER THE CHURCH
ABSTENTION DOCTRINE AND THE FREE
ESTABLISHMENT OF RELIGION CLAUSE OF THE
UNITED STATES CONSTITUTION ................................................. 5

II.  PETITIONERS HAVE FAILED TO APPEAL TIMELY ................. 13

III.  RESPONDENT'S DENIAL OF A RELIGIOUS
EXEMPTION WAS NEITHER ARBITRARY NOR
CAPRICIOUS,  AND PETITIONERS HAVE FAILED
TO MEET THEIR BURDEN OF PROOF ........................................ 16

IV.  PETITIONERS' REPLY ................................................................. 29

CONCLUSION ................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F. v. New York City Department of Education*,
NYSED Decision No. 17,532 (Nov. 6, 2018)...................................................... 17

*Appeal of B.O-G.*, 51 Ed Dept Rep, Decision No. 16,294 ...................................... 26

*Appeal of B.S., on behalf of her son A.S. v. Shefa School*,
NYSED Decision No. 17,058 (March 7, 2017) ...................................... 22, 26, 27

*Appeal of Boyle v. Madrid-Waddington Central School District*,
35 Ed Dept Rep, Decision No. 13501, 1995 WL 17958509.............................. 15

*Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014).................................... 13

*Cantwell v. Connecticut*,
310 U.S. 296 (1940) ........................................................................................ 8

*Caviezel v. Great Neck Pub. Sch.*,
701 F.Supp. 2d 414 (E.D.N.Y. 2010), *aff'd*, 500 F.App'x 16
(2d Cir. 2012), *cert. denied*, 569 U.S. 947 (2013) ...................................... 17, 18

*CH v. RH*,
18 Misc. 3d 268 (Sup. Ct. Nassau Co. 2007)...................................................... 6

*In re Congregation Yetev Lev D'Satmar, Inc. v. Kahana*,
9 N.Y.3d 282 (2007) ................................................... 6, 7, 8, 12, 13

*Appeal of D.B., on behalf of her son E.L. v. New York City
Department of Education*, NYSED Decision No. 17,158
(Aug. 22, 2017) .............................................................................................. 25

*Appeal of D.W. and N.W. v. Yeshiva of Spring Valley*,
NYSED Decision No. 16,144 (August 30, 2010)...................................... 23, 24

*Appeal of E.H, on behalf of her daughter A.F. v. New York City
Department of Education*, NYSED Decision No. 17,532
(Nov. 6, 2018) .............................................................................................. 17

*Appeal of Epstein*, 34 Ed Dept Rep 572................................................................ 15

ii

*Everson v. Board of Educ.,*
  330 U.S. 1 (1947) ................................................................ 8

*First Presbyterian Church of Schenectady v. United Presbyterian Church in U.S.,*
  62 N.Y.2d 110 (1984) ......................................................... 9

*Flynn v. Estevez,*
  221 So.3d 1241 (Court of Appeal of Fla., 1st Dist. 2017) ......... 10, 11, 12, 13, 31

*Matter of Holy Spirit Assn. for Unification of World Christianity v. Tax Commn. of the City of New York,*
  55 N.Y.2d 512 (1982) ......................................................... 8

*Kavanagh v. Zwilling,*
  997 F.Supp.2d 241 (S.D.N.Y.),
  *aff'd,* 578 F.App'x 24 (2d Cir. 2014) ................................... 9

*Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church in N. Am., 344 U.S. 94 (1952)* ............................................. 7, 9

*Appeal of Keen,* 32 Ed Dept Rep 299 ................................... 15

*Appeal of Magee,* 30 Ed Dept Rep 479 ................................ 15

*Maryland & Va. Churches v. Sharpsburg Church,*
  396 U.S. 367 (1970) ........................................................... 8, 9

*Mays v. Burrell,*
  124 A.D.2d 714 (2d Dep't 1986) ......................................... 12

*Ming Tung v. China Buddhist Ass'n,*
  124 A.D.3d 13 (2014), *aff'd,* 26 N.Y.3d 1152 (2016) .............. 7, 8, 13

*NM v. Hebrew Acad. Long Beach,*
  155 F.Supp.3d 247 (E.D.N.Y. 2016) ..................................... 18

*Appeal of O'Brien on behalf of Crystal F. Dell'Era v. Chester Union Free School District,*
  44 Ed Dept Rep, Decision No. 15092 (2004) ......................... 15

*Park Slope Jewish Center v. Stern,*
  128 A.D.2d 847 (2d Dep't 1987) ......................................... 9

*Appeal of Phillips*,
40 Ed Dept Rep 241, Decision No. 14,471 ........................................ 15

*Appeal of Recore*,
42 Ed Dept Rep 283, Decision No. 14,856 ........................................ 15

*Appeal of Roberta A. Caswell v. Panama Central School District*,
NYSED Decision No. 15,920 (May 22, 2009) .................................... 29

*Appeal of S.F. and E.R., on behalf of their daughter K.F. v.*
*Clarkstown Central School District*, NYSED Decision No. 17,439
(July 9, 2018) ........................................................................ 23, 24

*Serbian Orthodox Diocese v. Milivojevich*,
426 U.S. 696 (1976) .......................................................................... 9

*Sherr v. Northport-East Northport Union Free School District*,
672 F.Supp. 81 (E.D.N.Y. 1987) .................................... 18, 19, 22, 23

## U.S. Constitution

First Amendment ........................................................................... *passim*

Fourteenth Amendment ........................................................... 7, 8, 13

## Statutes, Rules and Regulations

Religious Freedom Restoration Act of 1993, 42 U.S.C. §2000bb .................... 12, 13

New York Education Law § 310 (6) ........................................................ 14

New York Education Law §914 ............................................................... 1, 5, 13

New York Public Health Law § 2164 ................................................ *passim*

Regulations of the Commissioner, 8 NYCRR 275.3 ............................... 29

Regulations of the Commissioner, 8 NYCRR 275.14 ............................. 29

Regulations of the Commissioner, 8 NYCRR 275.16 ...................... 14, 15

Dept. of Health Regulation, 10 NYCRR §66-1.3 ............................... 1, 5

Respondent yeshiva, Shulamith School for Girls ("Shulamith" or "Respondent"), respectfully submits this memorandum in opposition to the relief sought by Petitioners ██████████ and ████████████ , on behalf of ████████ ██████████ nd I███████████████ ("Petitioners") in their Petition (the "Petition") and in support of Shulamith's motion to vacate the stay entered in this proceeding and to dismiss this appeal.   As demonstrated hereafter, the Commissioner of Education must dismiss this appeal under the First Amendment's Free Exercise of Religion clause and the church abstention doctrine or, alternatively, deny the relief requested and vacate the stay previously granted on January 15, 2019.

## FACTS

The facts in opposition to the Petition and in support of this motion are set forth in the Shulamith's Answer (the "Answer") to the Petition served and filed herein and in the affidavits of Michelle Fishman, Executive Director of Shulamith, attached as Exhibits 3 and 4 to the Answer.

Succinctly stated, Petitioners in 2017 sought and were denied in writing by Shulamith a religious exemption from the New York State immunization requirements contained in New York Education Law §914, New York Public Health Law §2164, and Department of Health Regulation 10 NYCRR §66-1.3.  *See* Exhibit B to Petition ("PExh __").  Petitioners renewed their application in 2018 and were again denied.  PExh G, December 13, 2018 letter from Shulamith to Petitioners.

Before the denial of the renewed application in 2018, Shulamith gave Petitioners the opportunity to submit additional documentation and to make an oral, in-person presentation in support of their application for a religious exemption. *See* PExh D, November 21, 2018 letter from Shulamith to Petitioners.  Petitioners submitted one two-line letter from their rabbi (PExh F) that gave no support to Petitioners' assertion that their religion, Judaism, or their Jewish (or any other) religious beliefs in any manner prohibited vaccinations, and they never requested a meeting to discuss their request for a religious exemption.

Shulamith's October 26, 2017 denial of Petitioners' request not only notified Petitioners that their request for a religious exemption was denied, it set forth the reason, to wit:  It is a Torah commandment, *i.e.*, Jewish religious law and belief recognized and followed by the school, that all children enrolled at Shulamith must have the vaccinations.  PExh B.  Shulamith thereby informed Petitioners of its rejection of their arguments for an exemption allegedly made under Jewish law.

Shulamith, therefore, fully complied with New York State law in enforcing its provisions and asking for Petitioners' plans "for getting your girls all the required immunizations," as Shulamith is obligated to do.  PExh B.

Although Shulamith denied Petitioners' exemption request in October 2017, Petitioners waited more than a year to commence this action. *See* PExh B and Petition.

2

Although Petitioners in 2012 had previously applied for a religious exemption (Exhibit 1 to Shulamith Answer ["RExh __"]), Shulamith did not have to concern itself with that request because Petitioners continued to vaccinate their children. Petition at 4, ¶10. Indeed, after Petitioners' 2012 religious exemption requests, Shulamith continued to require immunizations of Petitioners' daughters, and Petitioners continued to comply. *See* RExh 2 (Shulamith nurses' 2013 letter requesting "record of immunizations received" and "letter of MD plan to resume receiving immunizations"), and PExh E, Nov. 8, 2015 letter at 4th page (Petitioners were "constantly confronted with phone calls from the nurse's office at the girls' school about updating the vaccination record").

As stated by Shulamith in denying Petitioners' 2018 reapplication for a religious exemption, "we are aware of no basis whatsoever in Jewish law or tradition for prohibiting or even discouraging vaccination, and the Request does not provide any." PExh G. The renewed denial continued to advise Petitioners that "the lack of a basis in a particular religion's law for a religious objection that you claim is based on that very body of law is undoubtedly probative in determining whether a truly genuinely and sincerely held belief supporting an exemption exists." PExh G. Shulamith's December 13, 2018 letter amply demonstrates the full consideration given to Petitioners' request including discussing the rabbi's letter attached to the

request which "does not purport to make any claims regarding the impropriety of vaccination under Jewish law." *Id.*

Respondent's denial was neither arbitrary nor capricious, and the appeal must be denied.

4

## ARGUMENT

**I.    THE COMMISSIONER MUST DECLINE TO ENTERTAIN THIS APPEAL UNDER THE CHURCH ABSTENTION DOCTRINE AND THE FREE ESTABLISHMENT OF RELIGION CLAUSE OF THE UNITED STATES CONSTITUTION**

As set forth in the Answer and the Affidavit in Opposition annexed as Exhibit 4 thereto, the religious belief of Shulamith is that as a matter of Jewish law all students must be vaccinated in order to attend the school.  Answer at 5-6, ¶¶23-27; RExh 4 at 2-3, ¶¶8-11.  "We subscribe to the religious positions and interpretations set forth by the rabbis in Exhibit B hereto.  Accordingly, it is the *religious belief* of the Shulamith School for Girls that all students must be vaccinated in order to attend the School."  RExh 4 at 2, ¶9 (emphasis in original).

Shulamith is a Jewish day school required to follow Jewish law (halacha[1]).  As affirmed in the Answer and the Affidavit in Opposition, under Jewish law *all* students must be vaccinated against the diseases as set forth in and required by New York Education Law §914, New York Public Health Law §2164, and Department of Health Regulation 10 NYCRR §66-1.3.

Shulamith has affirmed that its sincerely held and genuine religious (Jewish) belief is that pursuant to halacha (a) every student must be immunized, and (b) any

---

[1] Halacha is constantly being made by recognized rabbinic authorities to guide observant Jews and was not frozen at the time of the Torah or Talmud as Petitioners assert.

student who is not immunized is prohibited from attending the school. Shulamith has attached to the Answer and Affidavit in Opposition the learned and thorough analyses of three prominent rabbis who have published these Halachic requirements. Exhibit B to RExh 4; *see also* lengthy discussion of these authorities on Jewish law in Point III below.

Under the First Amendment to the United States Constitution, where there is a dispute between the religious beliefs of a plaintiff and a defendant or a petitioner and a respondent that would have to be resolved in order to adjudicate the controversy, the courts or administrative bodies, in this case the Commissioner of Education, are precluded by the Free Establishment of Religion Clause and New York's church autonomy doctrine from entertaining or considering the dispute.

Because the Court of Appeals of the State of New York has stated that the "First Amendment forbids civil courts from interfering in or determining religious disputes…," the Commissioner must refrain from determining or considering this appeal and must dismiss this Petition. *In re Congregation Yetev Lev D'Satmar, Inc.,* 9 N.Y.3d 282 (2007). *See also, CH v. RH,* 18 Misc. 3d 268, 274 (Sup. Ct. Nassau Co. 2007), "courts cannot violate the Doctrine of Church Autonomy which prohibits judicial involvement with internal church governance, a determination of ecclesiastical questions, and inquiries or analysis of religious doctrine and practice."

6

Shulamith is a yeshiva, a Jewish day school. As a matter of yeshiva, *i.e.*, church, governance, Shulamith has determined the ecclesiastical question as to whether as a matter of Jewish law unvaccinated children may attend the yeshiva. That question has been determined based on Jewish law, and under that ecclesiastical law, unvaccinated children are forbidden from attending.

> The Establishment Clause of the First Amendment of the United States Constitution, which is binding on the states by the Fourteenth Amendment, guarantees religious bodies "independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine" (*Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116…[1952]). Consequently, courts are forbidden from "interfering in or determining religious disputes, because there is substantial danger that the state will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrines or beliefs" (*Matter of Congregation Yetev Lev D'Satmar, Inc. v. Kahana*, 9 N.Y.3d 282, 286, …[2007] [internal citations omitted]).

*Ming Tung v. China Buddhist Ass'n*, 124 A.D.3d 13, 18 (2014), *aff'd*, 26 N.Y.3d 1152 (2016). The court in *Ming Tung* concluded that resolution of the petition there would "entail an inquiry into the validity of petitioners' excommunications. Because this is an entirely ecclesiastical matter, we are forbidden from such an inquiry (*Congregation Yetev Lev D'Satmar*, 9 N.Y.3d at 286)." *Id.*

Shulamith's conclusion that all its students must be vaccinated is based on religious doctrine into which the Commissioner may not inquire. Shulamith's determination to exclude all unvaccinated students is premised on religious, not

7

secular, principles, precluding a state tribunal from interfering in or even considering the dispute.  *Congregation Yetev Lev D'Satmar,* 9 N.Y.3d at 288. Because the Commissioner here will have to determine the validity of Shulamith's interpretation and enforcement of Jewish law excluding unvaccinated students from the yeshiva— exactly like the determination of the validity of the excommunications in *Ming Tung*—the Commissioner is "forbidden from such an inquiry" and must dismiss the Petition here and vacate the stay.

Moreover, whether Petitioners could have found contrary rabbinic authority— which they did not—to that presented by Shulamith or whether the structure of rabbinic authority in Judaism differs from that of another religion has no bearing on the application of the church autonomy rule here.  "Constitutional protections to practice one's religion are not limited by the manner of its organization or structure (*see Matter of Holy Spirit Assn. for Unification of World Christianity v. Tax Commn. of the City of New York,* 55 N.Y.2d 512, 521–523 … [1982])."  *Ming Tung v. China Buddhist Ass'n,* 124 A.D.3d at 21.

> The First Amendment, binding on the States through the Fourteenth, prohibits the making of "laws respecting an establishment of religion, or prohibiting the free exercise thereof" (US Const, 1st Amdt, 14th Amdt; *Cantwell v. Connecticut,* 310 U.S. 296…[free exercise]; *Everson v. Board of Educ.,* 330 U.S. 1…[establishment]). Consistent with these amendments civil courts are forbidden from interfering in or determining religious disputes. Such rulings violate the First Amendment because they simultaneously establish one religious belief as correct for the organization while interfering with the free exercise of the opposing faction's beliefs (*Maryland & Va. Churches v.*

> *Sharpsburg Church,* 396 U.S. 367, 369…[Brennan, J., concurring]….
> The Constitution directs that religious bodies are to be left free to decide
> church matters for themselves, uninhibited by State interference
> (*Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696…; *Kedroff v.
> St. Nicholas Cathedral,* 344 U.S. 94, 116…).

*First Presbyterian Church of Schenectady v. United Presbyterian Church in U.S.,*
62 N.Y.2d 110, 116–17 (1984). *See also,* <u>Kavanagh v. Zwilling</u>, 997 F.Supp.2d 241,
250 (S.D.N.Y.), *aff'd,* 578 F.App'x 24 (2d Cir. 2014) (where a court in determining
the truth of a declaration " 'would examine and weigh competing views of church
doctrine,' the result is entanglement 'in a matter of ecclesiastical concern' that is
barred by the First Amendment…").

In *Park Slope Jewish Center v. Stern*, 128 A.D.2d 847, 848 (2d Dep't 1987),
the court stated: "The gravamen of the dispute is the plaintiff's requirement that
members of its congregation pledge adherence to a conservative egalitarian form of
worship. It is well settled that membership requirements are strictly an ecclesiastical
matter and decisions of the church or synagogue are binding on the courts…."
(Citations omitted.)   This is no different than Shulamith's requirement that all
parents follow the Jewish religion's requirement that all students be vaccinated to
attend the yeshiva. It is a "membership requirement" that is "strictly an ecclesiastical
matter."   "Thus, judicial resolution of the instant dispute would violate the
Establishment Clause of the First Amendment of the United States Constitution…."
(Citations omitted.)  *Id.*

9

In *Flynn v. Estevez*, 221 So.3d 1241 (Court of Appeal of Fla., 1st Dist. 2017) (Exhibit C to RExh 4), the defendant Diocese of St. Augustine sought "jurisdictional autonomy under its ecclesiastical powers to prevent a secular court from reviewing its decision to require that all students admitted to its schools be immunized as required by Florida law." *Id.* at 1243. The court continued to state that the Diocese's "policy, however, conflicts with a statutory exemption that allows parents to object on religious grounds to immunization of their children as a condition of admission to Florida public and private schools." *Id.* "The trial court concluded that the ecclesiastical abstention doctrine, also called the church autonomy doctrine, precluded it from wading into the religious controversy between the Diocese and a Catholic parent seeking admission of his non-immunized son to first grade. We agree." *Id.*

Just like here, "[e]arlier in their lives, some of the older children [of plaintiff] received vaccinations prior to the Flynns deciding that doing so was inconsistent with their relationship with God. ... The Diocese previously allowed non-vaccinated students to attend its schools but changed its policy for the 2015-2016 school year, requiring all students be immunized as a condition of admission. As a result, Flynn provided the school with religious objection in writing...." *Id.* When the child was denied admission, the parent sued, attempting to enforce the religious exemption provision. The defendant responded that its new "'requirement is a

10

religious tenet and practice' of the Diocese." *Id.* at 1244.  The Diocese argued, and the court agreed, "that it could not be compelled by a secular tribunal to comply with the statutory religious exemption, which would invade its ecclesiastical sovereignty as to an internal church policy and violate the First Amendment's free exercise and establishment clauses.  It said that resolution of Mr. Flynn's request to declare his religious objection valid and to admit his non-immunized child…would 'inappropriately entangle [the court] in constitutionally protected church doctrine' and improperly place it in the position of determining 'the religious morals, tenets and practices of a given religion.'" *Id.* at 1244-45.  The trial court concluded: "[T]he court is presented with a conflict between a ***statutory*** right provided to parents and a ***Constitutional*** right provided to the church.  A statute must always yield to the Constitution.   The Florida statute on immunizations, including the section on religious exemptions, remains valid and enforceable except that the exemption cannot be applied to a church in such a manner as to constitute a governmental intrusion into the church's right to determine the operation of its parochial schools." *Id.* at 1245 (emphasis in original).  The trial court held that it was precluded by the First Amendment from inserting itself into a religious controversy, and it could not compel the religious school to exempt a student on religious grounds.  *Id.*

The Florida appellate court agreed.  As Shulamith does here, the "Diocese has a religiously-based immunization policy with which one of its members disagrees.

Mr. Flynn seeks the power of the State to compel the Diocese to depart from its point-of-view and admit his non-immunized son.  But doing so would further his own religious views at the expense of the Diocese's on the topic of immunizations. We are convinced that a secular court should not be making the judgment as to which side's religious view of immunization is to be respected." *Id.* at 1249.

As stated in *Flynn*, the Jewish parents' statutory religious exemption request runs head-on into Respondent's constitutional religious freedoms to operate its Jewish school in accordance with Jewish law and without governmental interference.  This governmental administrative body must abstain from deciding competing religious views. *See also, Mays v. Burrell*, 124 A.D.2d 714 (2d Dep't 1986) (affirming dismissal of action because civil courts may not entertain "a controversy involving questions of church discipline…;" *In re Congregation Yetev Lev D'Satmar, Inc.*, 9 N.Y.3d 282 (2007) (forbidding under the First Amendment judicial intrusion into matters of religious doctrine).  Shulamith's determination that Jewish law prohibits attendance by unvaccinated children is a matter of internal yeshiva discipline, and as a matter of law may not be examined or second-guessed by the Commissioner.

Moreover, the application of Public Health Law §2164(9) to force Shulamith against its religious beliefs to accept unvaccinated children would substantially burden Shulamith's exercise of religion. *See, e.g.,* Religious Freedom Restoration

12

Act of 1993, 42 U.S.C. §2000bb *et seq.* ("RFRA") ("Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability…." *Id.*, §2000bb-1(a)); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Although the RFRA may not be applicable to state statutes, the First Amendment, through the Fourteenth Amendment, surely is, and the RFRA is explicitly based on the "free exercise of religion…protection in the First Amendment to the Constitution…." 42 U.S.C. §2000bb (a) (1).

As set forth in *Congregation Yetev Lev D'Satmar, Ming Tung, Flynn*, and the other cases cited above, the First Amendment prohibits the Commissioner and the courts from questioning or even examining the position of Shulamith that under Jewish law it must require that all of its students be vaccinated and refuse to admit any child who is not. New York law is exceedingly clear that this Petition and appeal must be dismissed and the stay vacated.

## II.   PETITIONERS HAVE FAILED TO APPEAL TIMELY

New York Education Law § 914 (1), 16 McKinney's, Education § 914 (1), provides: "Each school shall require of every child entering or attending such school proof of immunization in accordance with the provisions of section twenty-one hundred sixty-four of the public health law."

New York Public Health Law § 2164 (2), 44 McKinney's, Public Health § 2164 (2), requires parents in New York State to have their children immunized against certain diseases itemized in the statute. Public Health Law § 2164 (7) directs all schools in New York and their employees not to admit any child for more than 14 days without a certificate that the child has been immunized.

Petitioners' children have not been fully immunized.

Public Health Law § 2164 (9) provides for an exemption for "children whose parent, parents, or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required...."

Public Health Law § 2164 (7)(b) provides for aggrieved parents to "appeal by petition to the commissioner of education...."

Under New York Education Law § 310 (6), an aggrieved party may appeal to the Commissioner from any action made "by a principal, teacher, owner or other person in charge of any school in denying a child admission to, or continued attendance at, such school for lack of proof of required immunizations in accordance with section twenty-one hundred sixty-four of the public health law." Such appeal "must be instituted within 30 days from the making of the decision or the performance of the act complained of," in this case the denial of Petitioners' request for a religious exemption on October 16, 2017. PExh B; 8 NYCRR Part 275, §275.16.

As stated in *Appeal of Boyle v. Madrid-Waddington Central School District*, 35 Ed Dept Rep, Decision No. 13501, 1995 WL 17958509:

> An appeal to the Commissioner must be commenced within 30 days from the making of a decision or the performance of the act complained of, unless excused by the Commissioner for good cause shown in the petition (8 NYCRR 275.16). The time to commence an appeal runs from the date of the decision under review (Appeal of Epstein, 34 Ed Dept Rep 572; Appeal of Keen, 32 id. 299; Appeal of Magee, 30 id. 479). The record in this case reflects that respondent modified petitioner's job functions on November 17, 1994. Petitioner commenced this appeal on January 13, 1995, more than 30 days after respondent's action. Petitioner offers no excuse for the delay.

Here, the time to commence an appeal ran from the October 26, 2017, when Petitioners were notified by Shulamith of its decision to deny the religious exemption request. *See also, Appeal of O'Brien on behalf of Crystal F. Dell'Era v. Chester Union Free School District*, 44 Ed Dept Rep, Decision No. 15092 (2004) ("An appeal to the Commissioner must be commenced within 30 days from the making of the decision or the performance of the act complained of, unless excused by the Commissioner for good cause shown [8 NYCRR 275.16; *Appeal of Recore,* 42 Ed Dept Rep 283, Decision No. 14,856; *Appeal of Phillips,* 40 Ed Dept Rep 241, Decision No. 14,471]. Petitioners were informed of respondent's determination on March 18, 2004. Petitioners served the petition on June 3, 2004, beyond the thirty-day period. … Therefore, the appeal must be dismissed"). Petitioners here were informed of the decision denying their religious exemption request on October 26, 2017. Accordingly, this appeal is untimely and must be dismissed.

Petitioners applications in 2017 and 2018 were both based on the same November 8, 2015 letter.   PExh E.   Petitioners' 2018 Request for Religious Exemption, sworn to on December 3, 2018, expressly states that it is based on the 2015 letter and that "[o]ur family's religious views on this topic remain the same and have not changed."   PExh E at 1.   Indeed, Petitioners' claim is that they submitted their written statement "[o]n or about November 8, 2015…." Petition at 2, ¶2.   Thus, their written statement, dated November 8, 2015, was before the Shulamith principal when Petitioners' application for an exemption was rejected on October 26, 2017.   Petition at 2, ¶4, PExhs B, E.   Petitioners had until November 25, 2017, to appeal to the Commissioner of Education from Respondent's denial of their request for a religious exemption.   They did not timely serve their appeal, and the Petition should be dismissed.

### III.   RESPONDENT'S DENIAL OF A RELIGIOUS EXEMPTION WAS NEITHER ARBITRARY NOR CAPRICIOUS, AND PETITIONERS HAVE FAILED TO MEET THEIR BURDEN OF PROOF

Petitioners assert that they are observant Jews and purportedly base their objections on their Jewish religious beliefs. *See, e.g.*, Petition at 3, ¶8, at 4-5, ¶¶11, 12 ("commandments of Judaism," "transgresses Halacha").   Petitioners did not argue in their request for a religious exemption and do not argue here that Judaism or any other religion they believe in prohibits immunizations or vaccinations.   Petitioners

16

make clear that they would allow their children to receive injections of antibiotics if they were sick and the doctor prescribed it.  They admit to vaccinating their children both before and after they first sought a religious exemption in 2012, which has "a bearing on the assessment of the sincerity of the alleged religious beliefs…." *Appeal of E.H, on behalf of her daughter A.F. v. New York City Department of Education,* NYSED Decision No. 17,532 (Nov. 6, 2018), citing *Caviezel v. Great Neck Pub. Sch.,* 701 F.Supp. 2d 414, 430 (E.D.N.Y. 2010), *aff'd,* 500 F.App'x 16 (2d Cir. 2012), *cert. denied,* 569 U.S. 947 (2013) ("the fact that she had her first three children vaccinated is evidence of no religious problem on those occasions").

Petitioners infuse their arguments with references to keeping kosher, an exclusively Jewish obligation, but give no reference to any authority, Jewish or otherwise, prohibiting vaccinations or injections to prevent their and other children from being infected by serious diseases.  As stated by the court in *Caviezel*, 701 F.Supp.2d at 429: "Although they need not be a member of an organized religion, Mrs. Caviezel is a member of the Sanctuary of the Beloved Church.  There is no evidence that this church in any way expresses opposition to vaccinations." Petitioners are members of the Jewish religion (they submit a letter from the rabbi of their Jewish synagogue [PExh F]), and there is no evidence that this religion in any way opposes vaccinations.  As shown hereafter, Petitioners' religion supports and requires vaccinations.

The court in *NM v. Hebrew Acad. Long Beach*, 155 F.Supp.3d 247, 258 (E.D.N.Y. 2016), discussed *Caviezel*, stating that the *Caviezel* "Court noted that there was no evidence that the plaintiff's church expressed opposition to vaccinations," a determinative factor when parents rely on their church's beliefs as guiding their religious objection to vaccination. The *NM* court like the *Caviezel* court concluded that the parents had "a selective personal belief—not a religious belief." *Id.* (internal quotes omitted). As in *NM*, Petitioners here "concede[] that there is no tenet of the Orthodox Jewish religion that prohibits the practice of vaccinating." *Id.*

Petitioners rely on "the seminal case of *Sherr v. Northport-East Northport Union Free School District*, 672 F.Supp. 81 (E.D.N.Y. 1987), [which] conclusively held that a person **need not be a member of a recognized religious organization whose doctrines oppose vaccinations**." Petition at 6, ¶19 (emphasis in original). (*Sherr* predates both *NM* and *Caviezel*, which was affirmed by the Second Circuit.) Petitioners, however, are avowedly members of the Jewish religion and aver throughout that it is the precepts and laws of the Jewish religion on which they purportedly base their objections to immunizations. Yet, they provide no support for such purported beliefs while Shulamith provides persuasive support for its contrary belief that Jewish law *requires* that all students be vaccinated. *See* Answer

18

at 5, RExh 4 at 2, ¶¶8-9, and Exhibit B to RExh 4 (Rabbinic and Halachic authorities *forbidding* school attendance for unvaccinated children).

*Sherr* initially dealt with the unconstitutionality of the then-existing religious exemption requiring the requesting parent to belong to a "recognized religious organization." *Id.* at 90.  Surely, no one has sought to compel Petitioners to ascribe to the beliefs of any particular religion.  They have asserted that the basis for their objection to vaccinations is based on their Jewish religion.  Thus, it was and is appropriate for Respondent to weigh the genuineness and sincerity of Petitioners' beliefs on the Jewish faith's laws, known as halacha.  Attached as Exhibit B to RExh 4 are the recitations by prominent rabbis of Jewish law on the two issues raised here: (1) is there any prohibition under Jewish law against receiving the vaccinations required by New York State, and (2) does Jewish law require that Jewish schools prohibit unvaccinated children from attending school.   The reading and interpretation of Jewish law on these issues is clear and virtually unanimous among all the leading *poskim*, a Hebrew term meaning the accepted Talmudic scholars who interpret Jewish law:  (1) Jewish law does ***not*** prohibit vaccinations whether or not they include animal blood, and (2) Jewish law ***requires*** Jewish schools to deny admission to unvaccinated children.

These are the religious beliefs and conclusions of Jewish law relied on by Shulamith in denying Petitioners' exemption requests.  Answer at 5, ¶¶ 23-25; RExh

4 (Fishman Affidavit) at 2, ¶¶8-9; Exhibit B to RExh 4 (rabbinical pronouncements on the issues presented here).

Rabbi Hershel Billet, Senior Rabbi of the Young Israel of Woodmere and past president of the Rabbinical Council of America, states unequivocally: "There are no legitimate religious grounds to oppose vaccination. There are very clear religious grounds to make vaccination of children obligatory!" *Id.* at 1.

Rabbi Aaron Glatt cited the rulings of the most prominent Orthodox rabbis of the modern era, all of whom concur that vaccination not only is not forbidden by Jewish law but is obligatory and that an unvaccinated child *must* be denied admission to school:

> There is absolutely no one who disagrees with the psak [a rabbinic ruling] that a parent is required to remove one's child to safety when a danger is present. Indeed, this is part of the basis for the halachic ruling of HaRav Elyashiv zt"l who viewed normal childhood vaccinations as being an obligatory part of parental obligations. HaRav Asher Weiss, shlita [an honorific given to an esteemed rabbi], poseik [a rabbi who is a Jewish law expert and who gives rulings on Jewish law] for Shaare Zedek Hospital, a premier orthodox run hospital in Eretz Yisroel says it is a mitzvah and chiyuv [obligation under Jewish law] to get vaccinated . . . . He further states that Yeshivas have the right and even obligation to protect other students, and should not allow unvaccinated children into school. This is similarly the written psak of HaRav Yitzchok Ziberstein, shlita as well as the psak of HaRav Elyashiv, who ruled that parents have the right to have unvaccinated children excluded from class so as not to cause unnecessary risks for their children.
>
> Many other gedolei Yisroel [leading rabbinic authorities, literally "giants"], including HaRav Shlomo Zalman Auerbach zt"l, HaRav Yehoshua Newirth, zt"l, and yibadeil bein chayim lechayim,

20

HaRav J. David Bleich, HaRav Reuven Feinstein, HaRav Hershel Schachter and HaRav Mordechai Willig, shlita, have all ruled that there is no basis in halacha to suggest that vaccinations should be avoided.   All strongly urge and support appropriate universal vaccination against the major childhood potentially fatal illness that are preventable.  Indeed, it is sheker (false) to officially vow that Jewish law forbids vaccination – which is the only way in some states to avoid mandatory state vaccination laws by providing such a *false* religious attestation.

*Id.* at 3-4 (emphasis in original).

One of the leading poskim (interpreters of Jewish law) of the ultra-orthodox world, Rav Moshe Sternbuch, Chief Rabbi of the Orthodox Rabbinical Courts of Jerusalem and Rosh HaYeshiva-Ramat Bet Shemesh, also stated in no uncertain terms the Jewish requirement that parents vaccinate their children and that schools exclude unvaccinated children.  Exhibit B to RExh 4.  Rav Sternbuch's thorough and nuanced discussion of the halacha (Jewish law) relating to these issues is attached as part of Exhibit B to the January 11, 2019 Fishman affidavit.  RExh 4.  Petitioners argue that they rely on God as "the one that maintains our daily wellbeing, and that it is our duty to rely on Him."  PExh E, 12th page (penultimate page of Nov. 8, 2015 letter, first full paragraph).   Rav Sternbuch directly dealt with that erroneous interpretation of Jewish law, reciting that such reliance on God is only on matters between man and God, not where a child's health and the health of others is concerned as in the case of vaccinations.  He ruled that under Jewish law it is permissible "to force the parents to vaccinate their children…" and for "the parents

of vaccinated children ...to demand that children who are not vaccinated not be allowed to enter the Talmud Torah [Jewish school] together with their children...."

Rav Sternbuch finished his lengthy and learned analysis as follows:

> In conclusion, since it is proven that vaccines are effective to prevent the spread of disease, it is an obligation upon every father to vaccinate his children to prevent spread of the disease—as is the law of the Torah to follow the majority view of experts. Certainly here, where the view of the overwhelming majority of doctors and the boards of health that one should vaccinate, certainly then the administration of the schools may demand that those children that were not vaccinated not enter into the Talmud Torah [*i.e.*, yeshiva].

Exhibit B to RExh 4.

In *Sherr*, the court had to examine the sincerity of the religious beliefs of two families, the Sherrs and the Levys. The court rejected the claimed sincerity of the Sherrs because the church they purported to belong to was a sham, because they did not oppose intrusive medical treatments if their children were ill or injured—just like the Petitioners here; and because the Sherrs paraphrased the statement of another family involved in a prior federal court action on the same issue—again like Petitioners here (compare PExh E to *Appeal of B.S., on behalf of her son A.S. v. Shefa School*, NYSED Decision No. 17,058 (March 7, 2017). The Levys, on the other hand, belonged to the Church of Human Life Science, which the court found was not a sham and because that church, unlike Judaism, " 'reject(s) completely any manner of cutting, puncturing, pollution, intravenous injection of any substance, vaccination, inoculation or any other imposition upon the vital domain' and holds

that 'all drugs and vaccines are ethically, morally, religiously and physically wrong, being at variance with our Creator's Mandate.' " 672 F.Supp. at 97.  Plainly, the court in *Sherr* based its determinations as to whether their applications for a religious exemption were sincerely held on the religion they belonged to and professed to follow.  Petitioners here are Jews and profess to follow the laws and precepts of Judaism which do not prohibit vaccines, but rather, as set forth above, mandate that parents follow the advice of the experts—doctors—and immunize their children for their protection and the protection of others.  Under the holding of *Sherr* the instant appeal must be denied.

Petitioners also put great weight on *Appeal of D.W. and N.W. v. Yeshiva of Spring Valley*, NYSED Decision No. 16,144 (August 30, 2010), in which the Commissioner ruled against the Yeshiva.  In *Spring Valley*, there was "no indication in the record that respondent requested any supporting documents or other information from petitioners to further explain or clarify their religious beliefs." Here, to the contrary, Shulamith requested in writing that Petitioners submit supporting documentation, and Petitioners submitted one two-line letter from their synagogue's rabbi that did nothing to support Petitioners' argument that Jewish law required them to refuse to immunize their daughters (though they had already vaccinated them several times).  PExh F.  *See Appeal of S.F. and E.R., on behalf of their daughter K.F. v. Clarkstown Central School District*, NYSED Decision No.

23

17,439 (July 9, 2018) ("petitioners submit a letter from a priest who states that petitioners are "sincerely spiritual and ... actually practice their faith. ... I find that its contents are not dispositive in determining whether a genuine and sincere religious belief against immunizations exists.  Indeed, while the letter generally describes petitioners as spiritual and committed to their religion, it does not refer to immunizations at all").

Shulamith offered Petitioners the opportunity for a face-to-face meeting to discuss their purported beliefs, which Petitioners did not accept.  Indeed, Petitioners twice confirmed in writing that they did not want "verbal conversation," insisting that all communications be in writing per the advice of Petitioners' attorney.  PExhs B at 1 and A.  Petitioners cannot be heard now to complain that they did not have an in-person interview when they rejected one each time it was attempted by Shulamith.

In the *Spring Valley* case, one individual at the school had rejected the request for an exemption.  Here, every principal of the several Shulamith Schools as well as the Executive Director and the Board of Trustees reviewed and rejected Petitioners' request as not being genuine or sincerely held.  By requesting documentation, attempting discussions with Petitioners, offering to meet, and having multiple persons within the school administration review the requests, Shulamith clearly made a good faith effort to assess the credibility and sincerity of Petitioners' statements in their applications.  *See* PExhs B and D.  These multiple rejections in

2017 and again in 2018 were neither arbitrary nor capricious.  PExhs B and G ("It is the considered and unanimous view of our principals and administration that the Request does not establish the requisite 'genuine and sincere religious belief' that would form the basis for an exemption").  Can anyone make up what they claim is Jewish law, create their own twisted interpretations that are contrary to the halacha and thereby get an exemption?  Shulamith examined on multiple levels all Petitioners' applications and submissions in support of their requests, and Shulamith determined that the request was not based on any genuine or sincerely held religious belief.  Petitioners have failed to show that this determination was arbitrary or capricious.

Further, Petitioners continued to vaccinate their children for two years after they had submitted their first request for a religious exemption, surely evidence of a lack of genuineness and sincerity in their purported religious objections to vaccinations.  Moreover, Petitioners have failed to identify what immunizations have been completed for their two school-age daughters and which remain to be given or to establish that the remaining vaccinations contain any of the substances of which they complain, reason alone, per prior decisions of the Commissioner, to deny Petitioners' appeal.  *See, e.g., Appeal of D.B., on behalf of her son E.L. v. New York City Department of Education*, NYSED Decision No. 17,158 at 4 (Aug. 22, 2017) ("petitioner does not allege which vaccines, if any, contain such harmful ingredients

and does not provide any documentation which establishes a nexus between the student's remaining required vaccination…and her claimed religious objection to the ingredients of any such vaccine (*cf. Appeal of B.O-G.*, 51 Ed Dept Rep, Decision No. 16,294)." Likewise here, Petitioners fail to establish any nexus between whatever vaccinations remain for their daughters and the purportedly impure vaccines to which they object. This appeal must be denied and the Petition dismissed.

Finally, it seems readily apparent from a comparison of Petitioners' letter (PExh E) to support their application that it was artfully prepared by their attorney to fit within the Jewish religious exemption requests previously approved by the Commissioner. Although Respondent does not have access to the Commissioner's files which contain the applications in prior appeals, the decisions in prior cases provide enough information to show that Petitioners copied or paraphrased submissions or applications in other cases, some where the petitioners were represented by the same attorneys.

For example, in *Appeal of B.S., on behalf of her son A.S. v. Shefa School*, NYSED Decision No. 17,058 (March 7, 2017), in which the petitioner was represented by the same law firm as Petitioners here, Chesney & Nicholas, LLP, "[b]y letter dated November 3, 2015, petitioner requested a religious exemption…" from a Jewish day school called the Shefa School. *Id.* at 1. The letter of Petitioners

here is dated November 8, 2015. PExh E. In Petitioners' letter to Shulamith, they state: "I'm very aware that Judaism doesn't take a specific position on vaccination. Vaccines were invented long after Judaic laws were established." PExh E, Nov. 8, 2015 letter at 2, 3rd paragraph.[2] The letter submitted *five days earlier* to the Shefa School contained the *exact* same language, even both using the same contraction. *Appeal of B.S.* at 1. Both letters go on to say: "But it's well within the Talmudic tradition to question generally accepted secular practices in society in the context of Jewish law and tradition." *Id.* at 1. Again, *verbatim* what petitioner in *Shefa* said in her letter in support of her request for a religious exemption.[3] *Appeal of B.S.* at 1. Of course, the Petitioners' letter to Shulamith will have differences to individualize their application, but there is no sincerity in a letter that copies the purported support for its religious beliefs from the letter used by another parent for a different school 5 days earlier.

The parent in *Appeal of B.S.* included in her letter to Shefa School "a link to a website operated by the Centers for Disease Control and Prevention ('CDC')." *Id.* at 2. So too in Petitioners' letter to Shulamith did they provide the link to the CDC

---

[2] Although neither cars nor electricity nor cellphones were invented at the time of the creation of the Torah and Talmud, halacha now prohibits their use on the Sabbath. This is "new" Jewish law propounded by rabbis based on their reading of the Torah and Talmud that Petitioners surely follow. The halacha Shulamith follows in requiring its students to be vaccinated was also developed by rabbis based on their reading of the Torah and Talmud.

[3] Petitioners here could not have obtained the plagiarized language from the decision in *Appeal of BS*, because the decision was not rendered until March 2017, more than a year after Petitioners submitted their letter to Shulamith. PExh E.

website.  PExh E, Nov. 8, 2015 letter at 5th page.  Who actually visited the CDC website, the parents or the lawyers?  A cut-and-paste submission may lay out what look like religious arguments and beliefs, but they are neither genuine nor sincere. They certainly are insufficient to meet Petitioners' burden of proof.  To the contrary, the plagiarism demonstrates that Petitioners submission, trying to pass off the "beliefs" of others as their own, is capricious, not Shulamith's denial of their application.  If one were to compare the two letters, there would likely be many more identical passages, *i.e.*, plagiarisms.  Indeed, an examination of other cases or of submissions to schools may show that the same language is used on applications by Jewish parents to other schools, public and private.  It is no wonder that Petitioners failed to provide supporting documentation as requested by Shulamith or to arrange for a meeting as suggested by Shulamith in its good faith analysis of Petitioners' application.

Shulamith considered Petitioners professed reasons for seeking a religious exemption, gave Petitioners the opportunity to present additional support and to meet, and in good faith denied the application.  Petitioners have failed to show that Shulamith, its administrators, principals and Board of Trustees acted capriciously or arbitrarily, and this appeal must be denied, the Petition dismissed and the stay vacated.

## IV.   PETITIONERS' REPLY

Petitioners have served and submitted a reply (the "Reply") to Shulamith's Answer which Reply simply strengthens Shulamith's motion herein to dismiss this appeal.

The Reply contains an Exhibit A.  Such an Exhibit could have and should have been submitted with the Verified Petition and should be rejected.  *See Appeal of Roberta A. Caswell v. Panama Central School District*, NYSED Decision No. 15,920 (May 22, 2009) ("The purpose of a reply is to respond to new material or affirmative defenses set forth in an answer (8 NYCRR §§275.3 and 275.14).  A reply is not meant to buttress allegations in the petition or to belatedly add assertions that should have been in the petition").

Additionally, although Petitioners assert in the Reply that their Exhibit A to the Reply is a letter from a Rabbi Shmuel Kamenetsky, and someone has indeed put such a title on that exhibit, in reality it "was written by talmidim…," not by Rabbi Kamenetsky.  Reply Exhibit A at 1.  "Talmidim" is the Hebrew word for students, and there is no identification of who these students are.

Significantly, nowhere in Exhibit A to the Reply or in the appendage at the end of Exhibit A is there any statement that vaccinations are in any way prohibited under Jewish law.  Thus, Exhibit A to the Reply in no manner supports Petitioners' claims on this appeal that Jewish law prohibits vaccinations.  All Exhibit A does is

29

argue that although vaccinating children against measles may be appropriate and advisable, an unvaccinated student need not be excluded from attending a Jewish day school.  In essence, Exhibit A takes issue with Rav Sternbuch's ruling that as a matter of halacha (Jewish law), Jewish schools *must* exclude unvaccinated students.

Exhibit A to the Reply confirms that this is a religious dispute regarding the interpretation and enforcement of Jewish law by a Jewish school that is governed by such Jewish law.  It is Shulamith's position here that not only have Petitioners failed to demonstrate a sincerely held genuine belief that their religious (Jewish) law prohibits vaccinations, Shulamith *is required* by Jewish law to deny requests for a religious exemption and to prohibit such unvaccinated children from attending school.  Thus, by submitting Exhibit A, Petitioners have highlighted the religious dispute between Petitioners and Respondent that the Commissioner must decline to resolve or even consider under the church autonomy doctrine and First Amendment.

Shulamith has taken two positions with respect to Petitioners' appeal and application for a religious exemption.  First, under Jewish law Shulamith is precluded from accepting unvaccinated students, and second, that Petitioners do not "hold genuine and sincere religious beliefs which are contrary to the [vaccination] practices herein required…."  Public Health Law 2164(9).  These are discussed in Points I and III above.

Petitioners object to Shulamith's enforcement of its own religious belief that religious exemptions may not be accepted.  *See* Petition at 1, ¶¶3-4 ("respondent does not accept religious exemptions to vaccination requirements"); at 1, ¶4 (the yeshivas in the neighborhood, including Shulamith "are not accepting 'religious exemptions' any longer…"); and at 5, ¶16 (Shulamith wrote to Petitioners: "**it is clear to us that Jewish law permits, and a least arguably requires, vaccination**" [emphasis in original]).   Thus, the resolution of two competing religious beliefs is clearly at issue here, and the Commissioner must decline to consider this appeal under the First Amendment and the church abstention doctrine.  *See* Reply at 4, ¶9 (the First Amendment forbids civil courts from interfering in or determining religious disputes…").

*Flynn v. Estevez*, *supra*, 221 So.3d 1241, is based on the same First Amendment to the United States Constitution as the numerous New York cases cited above.  Its facts are nearly identical to those here, and its reasoning and logic are compelling.  Petitioners assert that "there are rabbis who will issue opinions in support or against almost any issue." Reply at 5, ¶12. Yet, although afforded every opportunity, Petitioners have failed to offer a single opinion or ruling of a rabbinic authority prohibiting vaccinations.  Respondent has submitted opinions of rabbinic authorities that it *must* follow.  The Reply confirms the existence of a religious dispute, and the Commissioner must dismiss this appeal.

## CONCLUSION

By reason of the foregoing, the Commissioner should dismiss the Petition or, alternatively, deny the appeal and the relief requested in the Petition, and should grant to Shulamith such relief as is just.

Dated:   New York, New York
         March 15, 2019

PUTNEY, TWOMBLY, HALL & HIRSON LLP
ATTORNEYS FOR RESPONDENT,
SHULAMITH SCHOOL FOR GIRLS

By: _____
        Philip H. Kalban

521 Fifth Avenue
New York, New York 10175
(212) 682-0020
pkalban@putneylaw.com

32