1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK

2

3    ------------------------------x
                                        19-CV-3152(MKB)
     SHULAMITH SCHOOL FOR GIRLS,

4                                       United States Courthouse
              Plaintiff,                Brooklyn, New York

5
              - versus -                May 28, 2019

6                                       5:00 p.m.
     MARYELLEN ELIA, COMMISSIONER

7    OF EDUCATION, and THE STATE
     OF NEW YORK,

8
              Defendants.

9    ------------------------------x

10
        TRANSCRIPT OF CIVIL CAUSE FOR TEMPORARY RESTRAINING ORDER

11              BEFORE THE HONORABLE PAMELA K. CHEN
                    UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES

14   Attorney for Plaintiff:  PUTNEY TWOMBLY HALL & HIRSON LLP
                              521 Fifth Avenue

15                            New York, New York 10175
                              BY:  PHILIP HAROLD KALBAN, ESQ.

16

17

18   Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
                              Phone:  718-613-2330

19                            Email:  LindaDan226@gmail.com

20

21

22

23

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                          2

1              (In open court.)

2              THE COURTROOM DEPUTY:  Civil cause for TRO hearing,

3    Docket 19-CV-3152, Shulamith School for Girls versus MaryEllen

4    Elia, et al.

5              Will the party please state his appearance for the

6    record.

7              MR. KALBAN:  Putney Twombly Hall & Kalban by Philip

8    Kalban.

9              THE COURT:  Okay, have a seat.

10             You can remain seated during this proceeding, but

11   make sure you speak slowly and clearly into the microphone so

12   our court reporter can record you.

13             MR. KALBAN:  Yes, Your Honor.

14             THE COURT:  Just let's start off with a couple of

15   practice tips or pointers, which I'm sure you're aware of, but

16   when you're filing a 121-application, you should give us a

17   hard copy.

18             I don't know if you delivered one to the clerk's

19   office, but it appeared that we never got one and nor did

20   Judge Brodie.

21             MR. KALBAN:  We were prepared to bring a hard copy

22   down but we were told by the clerk's office to file it

23   electronically.  But I did bring an extra copy with me.

24             THE COURT:  We'll take that, actually, and I'll give

25   that to Judge Brodie whose case this is.

PROCEEDINGS                                              3

1          And the second thing, although you partially

2     answered that, it sounds like this is the first time you're

3     stepping foot in court today.

4               MR. KALBAN:  It is.

5               THE COURT:  Okay.

6          So ordinarily I suggest to you, especially when

7     you're talking about an event that is supposed to happen this

8     evening, that you should come to court and anticipate, if you

9     get what you want, that you get a prompt hearing or conference

10    so that no time is wasted.

11              MR. KALBAN:  That was our intention, Your Honor,

12    but, unfortunately, I guess either they misunderstood us or

13    misinformation from the clerk's office saying file it

14    electronically, don't come down, they'll call us.

15              THE COURT:  Fair enough.

16         In the future, I think you might want to call and

17    find out which judge got it and see what the judge wants you

18    to do.  That's all fine.  So I just want to make sure you know

19    for the future.

20         I've reviewed your application and I understand the

21    substantive basis of your argument in support of the request

22    for a TRO, and then perhaps a preliminary injunction, if

23    that's necessary.

24         The first question I want to ask you, though, is one

25    that's not addressed in the papers, and that has to do with

PROCEEDINGS                          4

1    abstention.

2              So the logical first question for a federal court is

3    to say:  Is this a matter we ought to be getting involved in,

4    and I'm sure you're aware of the doctrine of Burford,

5    B-U-R-F-O-R-D, abstention.

6              So my first question to you is:  Why is this a

7    matter as to which the Court shouldn't exercise Burford

8    abstention, since this is something that's already pending and

9    is being heard right now in state court or, sorry, I misspoke,

10   state agency proceedings?

11             MR. KALBAN:  Your Honor, that's because of the

12   constitutional question that it's raised that this is, in

13   essence, a dispute between two parties as to what the

14   appropriate religious belief is.

15             The Commissioner of Education has not ruled on that

16   issue, but had -- and I don't know who directed or why the

17   letter yesterday -- no, last Thursday came from an appeals

18   coordinator rather than the commissioner or even an attorney

19   in the counsel's office, but it purports to extend the stay to

20   an evening after school activity that's not an educational

21   activity.

22             And it's an unfortunate circumstance, but the parent

23   body has become aware because of something that one of the

24   children said in its school that they are unvaccinated

25   children, and it is a major concern because of what's going on

PROCEEDINGS                    5

1    in Brooklyn and Queens, which are right across the border from

2    where the school's located.  And the only way to proceed would

3    be to get a court order.

4            The commissioner is not changing her position, or

5    the counsel's office is not changing its position with regard

6    to the admission of the child this evening.

7            THE COURT:  Right.  But I guess the fundamental

8    question, though, is this not a quintessential state matter

9    that that agency, or whatever other remedial pathways there

10   are for dealing with that within the state structure should

11   address rather than this Court.

12           So the question is whether or not any ruling from

13   this Court would be disruptive of state efforts to establish a

14   coherent policy with respect to a matter of substantial public

15   concern, and certainly immunization for school-age children

16   who are participating in the public school system, is a matter

17   of state concern.

18           MR. KALBAN:  Absolutely, Your Honor.

19           THE COURT:  Okay.

20           MR. KALBAN:  And if it were not for the

21   constitutional issue, the church abstention doctrine, I would

22   agree with Your Honor.  But because the church abstention

23   doctrine comes into play here, I think it is a federal

24   constitutional question.

25           And even when the highest court in the State of New

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                           6

1   York has applied the church abstention doctrine, it has done

2   it based on the federal constitution.

3          So the U.S. Constitution of free establishment of

4   religion clause has been used -- has been cited both by

5   federal and state courts to say that a court cannot intervene,

6   cannot take any steps with regard to a dispute as to religious

7   beliefs.

8          And that's exactly what we have here where the

9   statute, the state statute says that a parent can seek a

10  religious exemption.  The parent then submits a statement as

11  to why the parent's religious beliefs preclude them from

12  having their children vaccinated.

13         Typically a public school would rule -- would decide

14  on whether that is a sincerely held belief or not.  But here

15  we have a yeshiva saying that it's a matter of Jewish law, and

16  we've cited the authorities, the rabbinical authorities that

17  say that every child must be vaccinated, and you may not admit

18  a child, and that is a religious belief.

19         So now we have the parent's purported religious

20  belief coming up against the school's religious belief.

21         Now, we've also cited it in our brief and shown that

22  this was, in essence, a cut-and-paste job by these parents

23  using the same lawyers and the same language verbatim as to

24  other letters sent to other schools.  And it's becoming a

25  cottage industry of seeking religious exemptions.

PROCEEDINGS                          7

1              But that is not the basis on which we come to this

2      Court.  We come to this Court because it is a constitutional

3      question and we would ask this Court, as opposed to a New York

4      State court to rule that you cannot -- that the commissioner

5      cannot even hear this case because it is a violation of the

6      First Amendment's free exercise of religion law.

7              THE COURT:  So you're saying any time there is a

8      religious exemption or some freedom religion issue that

9      relates to a state agency's area of governance, that a state

10     agency should not be allowed to decide that?

11             MR. KALBAN:  No.

12             THE COURT:  Okay.  But that's what I hear you

13     saying.

14             In other words, I understand, and I agree with you,

15     that there's some cases that lend support to what you're

16     saying, which is where you have a constitutional question, the

17     federal courts, perhaps, or there's a greater argument that

18     Burford abstention should not be applied.  I understand that.

19             But here you have a situation where the

20     constitutional question, namely religious freedom, whoever is

21     claiming it, whether it's the school or the student, is

22     embedded in a fundamental question of governance of the school

23     system that the Department of Education certainly has

24     responsibility for, right?

25             In other words, weighing whether or not a student

PROCEEDINGS                                8

1  could be exempted from whatever the school requirement is,

2  vaccination, or perhaps studying on Saturday, or anything like

3  that.

4          The question I have for you is:  Why, though, isn't

5  that still a matter for the state agency to decide how to

6  balance the constitutional right that's being asserted by the

7  student, and by the school, with what the state generally

8  requires for all other students who are not asserting that

9  religious exemption?

10         MR. KALBAN:  Well, first the parents are not

11  asserting it's not a constitutional question with regard to

12  the parents, it's strictly a New York State statutory.

13         THE COURT:  But why is it not?  They're saying as a

14  matter of religion we don't want our child to have to be

15  vaccinated in order to go to school.  They're claiming

16  basically the flip side of the religion exemption, if you

17  will, or argument that you're making.

18         MR. KALBAN:  That comes into effect only, as here,

19  when it is a religious school on the other side.

20         There's a Florida case that we cited, *Flynn* I

21  believe it is, where the exact issue was before the court and

22  it had to do the Catholic school, but where the parents were

23  saying they want an exemption and the school was saying, no,

24  it is the Arch Diocese's belief that all children must be

25  vaccinated, and the court said it's a matter of constitutional

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

1   doctrine, the church abstention doctrine, we may not hear this

2   case.

3           THE COURT:  But this is a -- you mean the state

4   court.

5           MR. KALBAN:  Correct.

6           THE COURT:  That they could not hear the case.  Who

7   could not hear the case, the state court?

8           MR. KALBAN:  The state court.

9           THE COURT:  Because it would have to be decided by

10   the federal court.

11           MR. KALBAN:  No, because it a constitutional

12   question.  Because it is barred by the church abstention

13   doctrine from hearing the case.  And I think that's what we

14   here.

15           And you don't have -- the parents certainly aren't

16   taking that position.  And if it involves a private school

17   that's not a religious school, if it involves a public school,

18   that issue does not arise.

19           It does arise here, and might with the Catholic

20   school, where there is a religious belief on the school's part

21   that the children must be vaccinated.

22           And we've cited, you know, said chapter and verse

23   where the school's religious position comes from.

24           The petitioner has not cited where its position --

25   it cited some verses from various texts, but it doesn't show

PROCEEDINGS                                    10

1    any religious leader or rabbi's support for their position.

2              THE COURT:  But can I stop for a second, I'm sorry.

3    I'm confused about the case you site, *Flynn*, which just as you

4    say stands for the proposition due to this ecclesiastical

5    abstention doctrine, courts shouldn't be getting involved in

6    what are essentially religious disputes, or disputes about

7    religious interpretation, right?

8              MR. KALBAN:  Yes.

9              THE COURT:  So how does that help you?  That almost

10   suggests that this court should not get involved, doubly so if

11   you put aside even Burford abstention, but because courts

12   shouldn't get involved in divining what religions require.

13             MR. KALBAN:  Because we are not asking you to divine

14   what the religious -- you know, who's right on the religious

15   positions.

16             All the Court has to see is that there are two

17   opposing religious-based positions --

18             THE COURT:  Oh.

19             MR. KALBAN:  -- and say it can't be heard.

20             And we said that to the commissioner, but the

21   commissioner, rather than saying you can't hear this case, has

22   now attempted to extend its order, its state order, which was

23   entered, I have to admit, we have not fully briefed the issue.

24             We raised the issue, we have not fully briefed the

25   abstention doctrine but is now attempting to extend it to an

PROCEEDINGS                     11

1   evening program, and there's nothing in the state education

2   law that gives the commissioner any authority over an evening

3   program.

4            It's not an educational program, but we're not

5   asking -- again, we're not saying to this court, that's an

6   ancillary issue.

7            The prime issue is that these are two opposing

8   religious views, and the commissioner should be saying we

9   can't opine on it, therefore, we cannot enter a stay, and

10  that's why I'm asking this Court to tell the commissioner that

11  this is a constitutional issue where you cannot render an

12  opinion other than to dismiss the case.  And --

13           THE COURT:  But the only reason you're here in this

14  court is because you're asserting a religious freedom act

15  claim.

16           And for you to bring that, I have to acknowledge

17  that you're making some legitimate religious freedom act

18  argument that is part of your school's -- and even that raises

19  its own question -- but it's part of your school's religion

20  practice to require vaccinations of its student, correct?

21           And that's a legitimate religious freedom act claim.

22  That's the only way you get in front us, period.

23           Otherwise, I think what you're saying is that I

24  should rule that a state agency has no business acknowledging

25  or allowing any student who assert a religious freedom act

PROCEEDINGS                    12

1    exemption from vaccination.

2            Because that's what's going on.  The school's saying

3    yes for now we are allowing this student to assert this

4    exemption based on a quote/unquote sincerely-held religious

5    belief against vaccinations, and you're saying I should come

6    in and say the state agency, not a court, has no business

7    doing that.

8            Because you have your own religious freedom act

9    claim and, therefore, you're vying on who's right about what

10   Jewish -- the Jewish religion requires.

11           MR. KALBAN:  No, because the Court can't even assess

12   what the Jewish religion requires.

13           THE COURT:  Which court are you talking about, are

14   you talking about me?

15           MR. KALBAN:  Yes.  And I'm talking about the

16   commission.

17           THE COURT:  But the commission is not a court, it's

18   a state agency --

19           MR. KALBAN:  Correct.

20           THE COURT:  -- whose executive function is to

21   administer the school system.

22           MR. KALBAN:  Yes.

23           THE COURT:  So this case, the Florida case you site,

24   doesn't stand for the proposition that a school district or

25   some educational body in the state has no right to grant

PROCEEDINGS                          13

1    religious exemptions of their own regulations, namely the

2    immunization regulation.

3              MR. KALBAN:  No, the child, through her parents,

4    certainly can apply for the exemption.

5              THE COURT:  Which they did, and got.

6              MR. KALBAN:  Which they did.

7              But if the religious school has a religious belief

8    that is contrary, and that -- by reason of that it rules that

9    the student may not attend in this instance, and that's what

10   occurred, then when the parent appeals to the commissioner,

11   the commissioner --

12             THE COURT:  Has to bow out?

13             MR. KALBAN:  The commissioner is bound by the

14   First Amendment just as any court is bound by the

15   First Amendment and has to say we cannot hear this appeal.

16             THE COURT:  You know what's interesting is, I'll

17   tell you, I was actually more inclined to issue the TRO

18   because I thought the substance of what you were arguing was

19   to have this Court decide whether or not the religious

20   exemption that is being claimed is a legitimate one, or

21   whether or not, perhaps going further, the rights of the

22   school and their interpretation of what the religion requires

23   should prevail.

24             But what you're essentially arguing is that you want

25   this Court to basically say that the state agency has no

PROCEEDINGS                     14

1    business adjudicating the school's challenge to the exercise

2    of religion claim being made by the student.

3              That's what you're saying.  That once the school

4    decides to assert a Religious Freedom Act, or a religious

5    claim, a religiously-based claim, then the state agency has no

6    power.

7              That's what you're asking for.  And that strikes me

8    as a very controversial proposition that I'm not sure you're

9    going to win on.

10             MR. KALBAN:  If the judicial body determined that

11   the school's position was frivolous, then I think the judicial

12   body probably could go forward and hear the case.

13             But if it's determined that the school is

14   legitimately asserting, as in the *Flynn* case, a religious

15   belief, then I don't believe a court or a commissioner under

16   the First Amendment can proceed on that claim.

17             It has to dismiss it and say we are bound by the

18   First Amendment and the freedom of religion clause, and we

19   cannot determine this issue.

20             You want to go to a religious court, be our guest.

21             THE COURT:  But I don't understand that.  It seems

22   like your First Amendment door only swings one way; only if

23   they decide.

24             I mean it's a First Amendment Religious Freedom Act

25   claim to begin with because the student is asserting a

PROCEEDINGS                          15

1   First Amendment religious right not to get vaccinated, right?

2            The parents are saying:  We want to be exempted from

3   your state regulation to vaccinate our child based on our

4   religion.

5            MR. KALBAN:  No, I disagree, Your Honor, with all

6   due respect.  It's based on a statutory exemption not on a

7   constitutional exemption.

8            The statute says that there are two -- that every

9   child must be vaccinated and lists ten different vaccines that

10  they must have, immunizations, and it says:  However, if there

11  is a medical reason, if the vaccination is going itself is

12  going to cause medical injury to the child, that's one

13  exemption.

14           And there's a second exemption and the language is:

15  If there is a sincerely-held genuine religious belief against

16  vaccination --

17           THE COURT:  Okay.

18           MR. KALBAN:  -- and that's been used by Jehovah's

19  witnesses.

20           THE COURT:  Christian Scientist.

21           MR. KALBAN:  Christian Scientist.

22           And it's been used by Jews in public schools, in

23  Great Neck and other public schools, and it's been used in

24  yeshivas.

25           But I think this is probably the first time that a

PROCEEDINGS                    16

1   yeshiva is coming forward and saying that we have studied this

2   issue, spoken to the rabbinical authorities, and as a matter

3   of Jewish law and Jewish beliefs, we may not admit your child

4   to the school.

5          So now we have a direct conflict between the

6   religious belief of the parent, and the religious belief of

7   the school.  That has not arisen in New York previously.  It

8   has arisen in Florida.

9          And in Florida, the court said First Amendment, we

10  can't hear this.  I think the commissioner has to say the same

11  thing.  But the commissioner hasn't.

12         And there's an event tonight, and it will raise all

13  kind of havoc, but that's why we're here to say if we can get

14  a restraining order for today and we go ahead and the Court

15  gets to hear the case fully, but it's our position that

16  because there are, let's say, two legitimate religious beliefs

17  meeting head to head, the commissioner is precluded, as a

18  matter of constitutional law, from addressing the issue.

19         And we're asking you to say let's have a hearing on

20  that and restrain the child from, in essence, allow the school

21  to prohibit the child from attending tonight.

22         THE COURT:  Okay.  But your position then is when,

23  there's only one side that's asserting a religious right, that

24  doesn't implicate this doctrine of courts having to stay out

25  of it.

PROCEEDINGS                    17

1          MR. KALBAN:  That's correct.

2          THE COURT:  But because it's a statutory provision

3    or because it's not or -- because it's still an assertion of a

4    religious right.

5          There's still a question of sincerely-held religious

6    belief embedded in that, right?

7          In other words, one of your arguments is that the

8    parents don't have a sincerely-held religious aversion to

9    immunization.

10         MR. KALBAN:  Right.  That's correct.  That's one of

11   the arguments.

12         THE COURT:  But so long as the situation remained as

13   such, and if the school had found that it wasn't sincere,

14   which is what you believe, you would say that -- I'm trying to

15   configure this appropriately -- but you would say that if the

16   parents wanted to appeal that decision, the school authority

17   would have the -- or the state court would have the ability to

18   adjudicate that.

19         MR. KALBAN:  Yes.

20         THE COURT:  Because it's only one religious belief

21   that's being asserted by one side.

22         MR. KALBAN:  Correct.

23         THE COURT:  But somehow when the school decides to

24   assert a contrary religious belief based on the same religion,

25   then the courts lose any ability to adjudicate that dispute.

PROCEEDINGS                          18

1          MR. KALBAN:  That's correct.

2          Because the school -- if the school has a legitimate

3    argument based on its religious belief and not something

4    that's made up, and there are a lot of cases on, you know,

5    what constitutes a sincerely-held religious belief.  It can't

6    be something that's plucked out of thin air, it has to be

7    based on something.

8          And if the -- I think the same standard would apply

9    for the school.  So if a school, without any basis, just said

10   we've got a religious belief against it, I don't think that

11   the constitutional prohibitions would apply.

12         I think, yes, there is an initial step for a court

13   to take, as the *Flynn* court did, to say this is a legitimately

14   held religious position on the part of the plaintiff and on

15   the part of the defendant, therefore, we cannot hear it.

16         But that would go to the next step before this Court

17   where there would be a hearing on a preliminary injunction

18   request.

19         THE COURT:  Well, let me say this:  I don't agree

20   with the Florida case you're citing in terms of this

21   ecclesiastical extension doctrine.  I mean, you acknowledge

22   that hasn't been found to govern here in New York, and you're

23   obviously relying on a Florida state case.

24         To me the issue seems one of due process, if you

25   will, or some balancing of what the state government's right

PROCEEDINGS                          19

1    is to make a determination about requirements for education

2    when balanced against the assertion of a constitutional right,

3    whether it's the school's or the student's.

4               I'm not sure that the school necessarily has a

5    constitutional right to assert, and that's something I haven't

6    really looked into, versus the individual.

7               Perhaps that's so -- well, it may well be so that

8    the school recognizes an entity that can have a sincerely-held

9    religious belief that guides how it runs its operations and

10   then might get countervailing force against what regulations

11   by the state it's required to accept.

12              Here it happens to be that the school's religious

13   beliefs align with the state's stated regulation requiring

14   vaccination, but it could just as easily be the opposite.

15              To me it's not a question about adjudicating what

16   the religion requires so much as what is the school allowed to

17   adjudicate in terms of the balancing of constitutional

18   assertions of religious rights and its primary authority to

19   run a school in a safe manner.

20              That seems to be more the issue.  I don't think the

21   courts will exempt themselves or should be abstaining from

22   some adjudication of that question.

23              I'm not sure it involves them figuring out what the

24   religion requires so much as allowing -- determining the issue

25   of whether or not the state gets to be the authority; the DOE

PROCEEDINGS                    20

1     gets to be the final word on that or not, and whether they did

2     that consistent with due process.

3              I think that's one of the fundamental questions than

4     adjudicating what the Jewish religious requires.  Maybe that's

5     part of it, I'm not quite sure, since I haven't thought about

6     the final analysis.

7              But in terms of the question that you're raising, am

8     I correct that what you're saying is you want this Court to

9     rule that based on this ecclesiastical abstention doctrine

10    that the Department of Education for New York State has no

11    business and has no authority to decide whether the school's

12    religious beliefs trump the individual's religious beliefs

13    and, therefore, it doesn't have the authority to decide

14    whether to stay the denial of the religious exemption by the

15    school.

16             Because the school denied religious exemption

17    finding it wasn't sincerely held --

18             MR. KALBAN:  Right.

19             THE COURT:  -- and wanted the child to be excluded

20    until they got vaccinated.

21             MR. KALBAN:  Correct.

22             THE COURT:  The state stayed that denial, and you

23    want me to -- not me, Judge Brodie eventually -- to order the

24    state to stand down finding that they have no authority under

25    this abstention doctrine that you cite from Florida to

PROCEEDINGS                              21

1   adjudicate religious beliefs, correct?

2            MR. KALBAN:  That is correct.

3            But it's not just from Florida, we've cited New York

4   State cases as well.

5            The *Satmar* case and other cases that have the same

6   conclusion, just not directly relating to the vaccination

7   issue, but the state -- the Court of Appeals has held that it

8   can't adjudicate such disputes.

9            THE COURT:  What was the context of the *Satmar* case?

10           MR. KALBAN:  I having to go back and look, Your

11   Honor.

12           THE COURT:  You're talking about the Congregation

13   Yetev Lev D'Satmar case, et al.

14           MR. KALBAN:  Yes.

15           THE COURT:  Okay.

16           So that case you say stands for the proposition that

17   the First Amendment prohibits the commissioner and the Court

18   from questioning or even examining the position of Shulamith,

19   your school, that under Jewish law it must require that all of

20   its student be vaccinated and refused to admit any child who

21   is not.

22           I'm look at your brief submitted to the

23   commissioner.

24           MR. KALBAN:  Right.

25           THE COURT:  I don't see a description of the case

PROCEEDINGS 22

1    itself.

2          MR. KALBAN:  No.  I did not grab a copy.  I'm sorry,

3    Your Honor.

4          THE COURT:  All right, so let's do this:

5          Here's what I'm prepared to do, and keeping in mind

6    that it's ultimately not going to be my case, but I have

7    consulted with the chambers of Judge Brodie who is not

8    available to hear this.

9          So first of all, the standard for issuing any kind

10   of preliminary injunction or temporary restraining order is

11   well established.

12         So the moving party here, Shulamith School for

13   Girls, because of this extraordinary relief that it is

14   seeking, must show either a likelihood of success on the

15   merits, or sufficiently serious questions going to the merits

16   to make them a fair ground for litigation with a balance of

17   hardships tipping decidedly in Shulamith's favor.

18         And, second, the likelihood of irreparable harm in

19   the absence of such an order.

20         And I'm citing from a decision that I issued couple

21   years ago *Patrick versus Success Academy Charter Schools,* and

22   it's a Westlaw reported decision, 2017, Westlaw 6557478, and

23   that's at page 3.

24         In turn, the *Patrick* case sites In re *Feit*, F-E-I-T,

25   & *Drexler, Inc.*, 760 F.2d 406 at 415, which is Second Circuit

PROCEEDINGS                     23

1    case from 1985.

2           Now here I do find, albeit as I mentioned a moment

3    ago, I think the argument may have to be refined or adjusted a

4    bit, but I do find there is some sufficiently serious

5    questions raised on the merits of this matter, though I think

6    of them more as due process issues than anything else.

7           Regarding the decision by the school -- Education

8    Department, rather, to vacate or stay, I should say, the

9    denial of the religious exemption by Shulamith school, I do

10   note that where constitutional rights are being asserted, the

11   need to show irreparable harm is either absent or more de

12   minimis.

13          So that applies to this case because the second

14   aspect of the test is the likelihood of irreparable harm.

15          However, I also note that there has been some

16   suggestion about potential harm to the other students and the

17   family members in the Shulamith school with respect to the

18   event that is supposed to occur tonight.

19          The obvious question, of course, is why Shulamith

20   did not bring this TRO application earlier, but that's been

21   answered by the fact that the Department of Education only

22   announced its broadening of the stay to extracurricular

23   activities last Thursday, which was right before the Memorial

24   Day holiday.

25          So, therefore, it made it quite difficult for this

PROCEEDINGS                                24

1    issue to be addressed further in advance of the actual event.

2              It does seem to me that since we are literally on

3    the day or the evening of the event, I should say, that it

4    would be difficult for Shulamith to do anything but, you know,

5    cancel the event or hastily advise all the parents and family

6    members and the children who are attending this event of the

7    circumstances; namely, that they are aware that there's one

8    student who may be attending or is likely to attend who has

9    not been vaccinated, which could, in turn, result in low

10   attendance or no attendance at an event that has been

11   represented to be a fund raiser, amongst other things, for the

12   school.

13             So I do find that that also would be a foundation

14   for a finding of irreparable harm in the absence of a TRO.

15   So, therefore, I also find that the balance of hardship does

16   tip in Shulamith's favor, perhaps because of numerosity, the

17   number of students and family members that would be affected

18   by not issuing a TRO against the individual student's right to

19   attend this extracurricular activity for tonight.

20             Couple questions do I have for you, though,

21   Mr. Kalban.

22             Is there a documented number of -- or are there a

23   documented number of measles cases in the area where the

24   school is located in Nassau County?  I know there certainly is

25   in Brooklyn.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                        25

1          MR. KALBAN:  Brooklyn, and it's now in Queens as

2     well.  And Queens is right on the border and it's significant.

3     And Far Rockaway, which is part of the area where the measles

4     seems to be spreading, is right next to the five towns where

5     this yeshiva is located in Cedarhurst.

6          THE COURT:  So how close would you say Cedarhurst is

7     to an area of out break, if you know?

8          MR. KALBAN:  Ten miles.

9          THE COURT:  Okay.

10         And do you know if any of the student from this

11    school go to temple or otherwise have reason to go into any of

12    the affected areas?

13         MR. KALBAN:  They certainly have friends in the

14    Brooklyn communities.  Whether they are -- you know, there are

15    different neighborhoods in Brooklyn, but there are

16    certainly -- because of the spread of the measles epidemic,

17    there's concern that student have friends in Brooklyn and

18    Queens.

19         And certainly in Queens, like I said, it's just

20    across the border, Far Rockaway children come -- you know,

21    they come in contact with the five towns' children with some

22    degree of frequency.

23         THE COURT:  Are there other events that the school

24    has planned after today?

25         MR. KALBAN:  Not that I'm aware of, Your Honor.

PROCEEDINGS                            26

1              THE COURT:  When does their school semester or year

2    end?

3              MR. KALBAN:  I believe in the middle of June.

4              THE COURT:  Okay, so that's a little over two weeks

5    from now.

6              So right now, though, as things stand, and actually,

7    you know, I'm not sure I focused on this.

8              The stay that you want me to issue as to the

9    Department of Education stay, you want that also to apply to

10   the student attending classes until the school year ends as

11   well; is that right?  Or is it only as to this -- the

12   extracurricular event?

13             MR. KALBAN:  Only to the extracurricular event, Your

14   Honor.

15             THE COURT:  Because of the attendance of all family

16   members and pregnant women, et cetera.

17             MR. KALBAN:  Correct.

18             THE COURT:  So the order that -- the TRO that I will

19   issue, and I'll presumably use the proposed order and modify

20   it as necessary.  But that will only apply to the most recent

21   order issued by the Department of Education -- or the

22   education commissioner staying the denial as to this student

23   for extracurricular activities.

24             MR. KALBAN:  That's all we're seeking, Your Honor.

25             THE COURT:  Okay, that's fine.

PROCEEDINGS                         27

1          Otherwise this matter would be put over as

2     appropriate or deemed appropriate by Judge Brodie for further

3     proceedings.  It may well be that nothing is necessary given

4     that the school year is about to conclude and there are no

5     other extracurricular activities on the horizon.

6          Let me make one other note for the record -- and,

7     obviously, this is just my ruling and Judge Brodie may have a

8     different view of this -- at this time I don't find that the

9     Burford abstention doctrine is significant enough of an issue

10    so as to bar potential relief in this case; again, that's

11    something that can be revisited by Judge Brodie.

12          With respect to that issue, the cases that I've

13    looked at are *Liberty Mutual Insurance versus Hurlbut*,

14    H-U-R-L-B-U-T, 585 F.3d 639, a Second Circuit case from 2009,

15    which I think sets forth the relevant Burford abstention

16    doctrine standards.  Along with *Planned Parenthood of*

17    *Dutchess-ulster, Inc. versus Steinhaus*, S-T-E-I-N-H-A-U-S, 60

18    F.3d 122 at 127 to 129, 1995 Second Circuit case as well as.

19          In particular, I think the analysis in *Planned*

20    *Parenthood* is appropriate to this case.

21          There the Court focused on the fact that with

22    respect to the main criterion; namely, whether or not the

23    court's ruling would be disruptive, a state effort to

24    establish a coherent policy with respect to a matter of

25    substantial public concern, the court there found that the

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                    28

1   granting of relief would not, and that the involvement of the

2   federal court would not do so.

3          There the court considered three things:  Whether

4   the rules and regulations at issue were complex or not, so as

5   to weigh in favor of abstention.

6          And there the court found that they were not

7   sufficiently complex to the favor abstention.

8          I think what's appropriate is that here the

9   Department of Education is not ruling on any hard and fast

10  regulations so much as applying a general standard about

11  acknowledging or allowing religious exemptions based on some

12  assessment, I gather, of whether the religious belief is

13  sincere or not.

14         And I would contrast to something like a rate

15  setting, as often happens in the insurance industry, like the

16  *Liberty Mutual* case, or something like that.

17         Here it's a rather fluid and discretionary concept.

18  So I don't think it's complex or something that's uniquely

19  within the purview of state regulators.

20         The second prong that the *Planned Parenthood* court

21  considered whether the regulations contain broad other more

22  specific terms that require the expertise of state agencies or

23  experts in the field to interpret, here, as in *Planned*

24  *Parenthood*, I don't find that the regulations -- or rather I

25  find the regulations are very broadly worded for the reasons

PROCEEDINGS                    29

1    that I've just said and don't require specific expertise of

2    state regulators; if anything, perhaps you need Talmudic

3    scholar, but not state regulators.

4            And the third factor is whether or not the subject

5    matter is of unique importance to the state.

6            As in *Planned Parenthood,* I think here one could

7    argue that it is an area within or of unique importance to the

8    state; namely regulating immunizations and other requirements,

9    health requirement for school attendance, but I don't think,

10   as the Second Circuit found in *Planned Parenthood*, it's enough

11   to outweigh the other two factors and to make this a matter

12   that's not appropriate for federal court review.

13           I'll also finally cite two other cases.  This one

14   I'll definitely spell out *Hachamovitch*,

15   H-A-C-H-A-M-O-V-I-T-C-H, *versus DeBuono*, D-e-B-U-O-N-O, 159

16   F.3d 687, a Second Circuit case from 1998.

17           And then lastly, the case of *County of Suffolk*

18   *versus Long Island Lighting Company*.  This is a Second Circuit

19   case from 1990, 907 F.2d 1295 at pages 1308 through 1309.

20           And here I think what's relevant from this case is

21   the Second Circuit's acknowledgment that the Supreme Court

22   says:  The presence of a federal basis for jurisdiction may

23   raise the level of justification needed for abstention.

24           The fact that here, and they're talking about the

25   case below in that particular matter, the fact that here only

1    a federal claim was present raises a level justification even

2    more.  And this goes to argument for the plaintiff.

3              Essentially what the Second Circuit found there is

4    that there's a heightened need where there's a federal

5    question, such as a constitutional claim presented, to guard

6    against abstention, otherwise abstention would become the rule

7    rather than the exception.

8              So even though I raise the arguments, the

9    counterarguments to the plaintiff having this case heard here,

10   I do believe that Burford abstention should not prevent the

11   case from going forward at this stage.

12             And I do think that there are substantial questions

13   raised by the complaint such that it's appropriate to issue

14   the TRO that's very limited in scope, both time-wise and

15   event-wise; and in terms of the impact on the would-be

16   opposing party.

17             Interestingly enough, I guess it would be the

18   Department of Education, but the party that would arguably be

19   harmed would be the one student who wouldn't get to attended.

20             So I find that the balance of equity does tip in the

21   favor of the school at this point in time given the limited

22   relief that's being sought.

23             So that's the ruling.  I'll issue the order.  I'll

24   advise Judge Brodie, of course, in more detail so that she can

25   make a decision about how to proceed hereafter.  She may

PROCEEDINGS                                    31

1    require more information from the parties as to the ongoing

2    effect of this TRO.  But the TRO will expire within 14 days.

3              So if there's some other need, I suspect to reapply

4    for an injunction that will last during the duration of the

5    case, the plaintiffs will do that as they deem appropriate --

6    the plaintiff will do that as it seems appropriate is what I

7    should have said.

8              Is there anything else that you wanted to raise,

9    Mr. Kalban?

10             MR. KALBAN:  There is not, Your Honor.

11             I just want to thank you for your time in

12   accommodating me to get down here and be heard.

13             THE COURT:  And sorry about the misdirection and the

14   unneeded tips.  Your first instinct was the correct one.

15             All right, so you'll be hearing from Judge Brodie, I

16   imagine, with respect to scheduling of this, because she may

17   then direct the parties to go to discovery immediately.

18             I will attempt to explain to her what I think your

19   claim is, even though I view it as somewhat different, but you

20   may want to consider expanding the claim.

21             Maybe I'm wrong, but I'm not sure that your request

22   for an order telling the Department of Education that they

23   have no authority to decide this issue is the way to go.

24             I do think there's an interesting issue here about

25   an assertion of religious freedom rights -- I'm sorry, I kept

1   referring to act.  I just meant the constitution in general.

2   And that may be the issue that has to be resolved here.

3            However, I understand that your claim is that that's

4   an issue that courts don't have any business deciding either.

5            I'll let you figure that out with Judge Brodie.  All

6   right.

7            So nice meeting you, Mr. Kalban.

8            MR. KALBAN:  Thank you, Your Honor.

9

10

11            (Whereupon, the matter was concluded.)

12

13                      *     *     *     *     *

14

15

16  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

17

18      s/ Linda D. Danelczyk                June 24, 2019

19        LINDA D. DANELCZYK                      DATE

20

21

22

23

24

25